Good morning, ladies and gentlemen. Our first case for this morning is Donald Lacy against Keith Butts.  Good morning, and may it please the court. Indiana's Sex Offender Treatment Program, which I'll call INSON, is a rehabilitative program that requires sex offenders to admit and take responsibility for their sexual behaviors as part of treatment. Can I just tell you, just so that you can zero in, I did not understand the district court here to be saying anything about whether Indiana could have this program. Many states do. This is a 2254 case, right? Correct. It's not a 1983. Correct. And that has an effect on the standard of review. It has an effect on the scope of relief that can be given. And as I understand what the district court said, if Indiana wanted tomorrow to do exactly the same thing Kansas had done in the McCune case, have that array of disincentives, let's say, for people who don't want to participate in INSOM, Indiana would be perfectly free to do that. So I think the focus isn't can you have the program. The focus isn't even can you have a carrot and stick approach to things, or maybe an only stick approach to things. If you could focus on why it's permissible to delete good time credits from the records of those who've already accrued them, that would be very helpful to me. Yes, and that goes to the issue of compulsion. That unlike Kansas, where the department has discretion going forward to grant good time credits in Indiana, they're given day by day. No, but what I want you, maybe there are two groups of people, but some of the class members had already been given good time credits, but when they refused or were found not to be fully cooperative with the program, they leave the program. Then there's that 90-day period, and then they're approached again. And every time they say no, they lose 180 days good time credits that they already had, not that they're going to get in the future. And so my concern, I mean it's based on actually a lot of Supreme Court decisions. I think of cases like Glover against United States. Losing good time credits is why we are here under 2254. And the atypical and substantial hardship standard is not a 2254 standard. That's a Sandin against Conner 1983 standard. So I've never seen the Supreme Court blur it, and they certainly didn't in McCune. Yes, and in McCune, arguably the atypical and hardship, because that was the plurality, and Justice O'Connor disagreed. The plurality plus Justice O'Connor all agreed that when what happened to you is you lost visitation rights, your earnings changed, you couldn't have a TV, and on and on and on. They might move to the maximum security unit. I get that. That's a 1983 situation. But both the plurality and Justice O'Connor said we don't have before us a case where good time credit is being lost. That would be different. And so that's what you bring to us today, the different. And so I need you to put it inside 2254 analysis. Right, which is not in McCune, because it wasn't 2254. Correct. And when earned good time credits are taken away, the offenders are entitled to due process, the due process requirements of Wolf. And that is the 2254 analysis. For whatever reason for the discipline, that's what they're entitled to. The liberty interest triggers the due process protections. But the district court, the reason that the district court found that Indiana's program was different from, for example, Kansas, was the fact that they have already earned credit time in Indiana, and the program takes it away. And as the court just observed, McCune said that would be different. That would be different from taking away privileges. And what I want to suggest this morning is not necessarily the academic question of whether this is a liberty interest or whether it's just a privilege, but from the standpoint of compulsion of the offender. We could have an offender in Indiana and in Kansas who, because of their refusal to participate in sex offender treatment, both could have to serve their entire sentences. No benefit of credit time. But what do you do with cases like Edwards against Balasag? What do you do with cases that recognize that the loss of good time credit is a type of extension of a sentence? Now, if we had gone a different path on that, if the Supreme Court had said, oh, that's just all internal to the prison, we don't care about that, that's prison management, that would be a different path than the court has taken. But it seems to me Indiana's kind of stuck with the fact that the Supreme Court regards loss of good time credit as the occasion for a duration of confinement remedy, such as 2254, and that being punished by losing good time is a punishment. Again, as you point out rightly, Wolf against Donald is there, but it's a punishment. So I just don't see how you can get to the point of saying that that punishment is an appropriate thing to use when you have so many other things that you could use that would compel people to participate in this program. Well, it's true that there are many options that states have in operating these programs. The purpose of having consequences for not participating in Indiana and other states is to provide an incentive for... Sure. So why not do McCune? I'm not challenging Indiana's right to have this program at all. It's the self-incrimination compulsion. In an ordinary situation, if somebody said to you, if you don't talk to us, like in a police office, then we're going to keep you in jail for an extra 10 days. That would be incarceration for not talking, and that would certainly be something that there would be Fifth Amendment consequences for, right? Correct. So why isn't Indiana the same? Because the classic situation that the court just described, if you don't testify against yourself, like in a criminal trial, you'll be convicted. This is not a police interrogation. This is not a criminal trial. But what it is, it's a hearing in which the person is required to self-incriminate in order not to lose 180 days of good time credit. Well, I disagree, Your Honor, because the first question in the Fifth Amendment analysis is, is there a substantial risk of incrimination? And we are arguing that there is not, simply because people are told not to incriminate themselves. But look at what they're required to put down. Suppose the police have done a certain amount of background investigation, and now they learn the age of the victim at the time of the offense, the relationship between the participant and the victim, the sexual behaviors engaged in, how many times the victim was offended, over what period of time, what grooming techniques. That would be a lot of fill-in-the-blank information. I don't think you have to say that it's got to be standalone, do you? Well, the evidence before the court are those factors and those specific questions, is the program workbooks that ask these questions. And there's no evidence that offenders are required to turn these workbooks over to authorities, even to the counselors, that if they said to a counselor, if I answer all these questions correctly, I will incriminate myself. The counselor's not going to say, so incriminate yourself. No, what the counselor's going to say is, you're not cooperating in the program. I'm kicking you out and taking 180 days credit away from you. Well, no. We have unfettered discretion to do that. The offenders are, it's more important that they participate than that they answer each question completely. It's more important that they come, and rather than saying, here is a specific victim, than to say, when I was in my early 20s, I tended to molest four-year-old girls. Do we need a better record on this? Because I think there's a real discrepancy between what you're saying and the evidence that indicates what has really been the operation. And I might also add that in McCune, there's a statement that even though there wasn't evidence that people had been prosecuted, the court thought that the risk was enough to allow these folks to go forward in McCune. Can I ask you about that very point? Sure. You argue that the risk of incrimination is low because there's no recorded history of referrals to authorities. What legal authority do you have to support the view that the history is relevant as a legal matter? I think it goes to, for example, the Hoffman case that says, you look at the setting in which these questions are being asked, and the fact that this is a therapeutic setting where we have counselors, not law enforcement, not prosecutors asking questions, that they're wanting participation, that they are warning the offenders over and over, do not provide identifying information. That supports my argument that there is not a substantial risk of incrimination, not only in Indiana. But the risk that you're talking about is not a risk that the individual at all can control. We've got to take the program as it comes to us. Judge Wood's recognizing the workbook pages are what the workbook pages are, and the questions are what they are. And if they're filled out, as inmates are instructed to fill them out, the risk of what happens with that information is entirely out of the inmate's control. Well, what's in the inmate's control is what is discussed at the group sessions. There's no evidence that those written materials are turned over. In fact, the only thing that the counselor, well, and I'm veering into information outside the record, but what's more important to the program is that they do not incriminate themselves. They're warned over and over not to. If they go through the workbook and think about specific victims and their ages and all the other, they are telling themselves that this... How is it not incriminating, though? Okay, fine, so you omit the name of the victim, the precise address of the victim. But the moment an inmate says, I engaged in the following conduct with someone that was 10 years old, how is that not incriminating? The question is whether anything is communicated that would trigger the duty to report, the statutory duty to report. And that is not really well defined. Is it enough just to say I had a 10-year-old victim in 2014 who was a female? And among mental health professionals, there's a range. But the legal test doesn't require a probability of prosecution. It only requires that the incriminatory, the inculpatory information that is required to be disclosed under this program carries the risk of incrimination, and it seems very clear that this does. Given the detail that the prisoners are required to self-disclose in the course of this treatment program, including, as I understand it, the name of victims, the first name, if not the last name. They're instructed not to identify the last name, but identifying the name, age, and time frame of the victims and describe in detail the facts and circumstances of the sex crimes. And that plainly carries the risk of incrimination in a very serious way, particularly because there is no guarantee of immunity or confidentiality. Well, this court has the written materials, and it knows what questions are asked. It also knows that offenders are told not to provide identifying information, which would appear to be mutually exclusive propositions. Are they told to list the names, the first name of every victim? In their written materials. There's no evidence that these written materials are given to anybody instead of being used for their own... They form the subject of the group therapy sessions. For the group therapy, they need to come, having done their reflection about their past, their history, and then share. There's no reason for therapeutic purposes for them to say who their victims were. They're supposed to share the types of victims and how old they were, whether they groomed victims. That's the information that is necessary. The program is that the therapist, or whoever is running the group therapy session or counseling session, has the sole discretion to determine whether the prisoner is being sufficiently forthcoming and to order a polygraph, if not. And in the record, we have only one polygraph, only one example of a polygraph. What matters for legal purposes and for purposes of the Fifth Amendment analysis is what the program requires of the inmates and permits the government agents to do with that information. Right, and can I just interject? I thought there was just one person who, after taking a polygraph, was found not to be somebody who had committed the crime. There were actually quite a few polygraphs. I'm not going to find the page quickly, but there's evidence in this record of lots of polygraphs, but just one exonerated person. Those are cases where the offender refuses to admit to committing the offense he was convicted of. That's the only time that there will always be a polygraph. But it's misleading to say that there's only one polygraph. There are polygraphs all the time. There's only one polygraph regarding refusal to share sexual history. That's a different setting. And I see I'm cutting into my rebuttal time. If you would prefer, Judge Sykes has a question on the table, which maybe you should answer. I'm sorry? I said answer Judge Sykes' question, and then you can sit down. And I apologize if you could repeat the question. My point is that what matters for purposes of the legal analysis is the terms of the program. What does the program, the rehabilitative program, require of the inmates who are mandated into it? They're required to participate. They don't have a choice. And what does it permit the government agents who are running the program to do with that information? And it permits and, in some cases, requires that they turn it over to law enforcement. Correct. And the materials before the court show that they're required to write down information about their sexual histories. But it doesn't show. With significant specificity. They're also warned against disclosing. And this is disclosing to the group, okay, to a counselor. Identifying information, which shows INSOM does not want incriminating information. It does not want to be in the business of investigating crimes. It wants information for the purpose of effective treatment. I just think you can stop short of providing detail and yet incriminate yourself very substantially. Again, that is not, we have no evidence of that. Well, the point is I think it's more tested by the legal standard of risk that Judge Sykes is pointing to. I can omit names and addresses and precise locations and incriminate the daylights out of myself. Well, and if you were being interrogated by a police officer, by a detective, that would be different from being in counseling and telling these things to a counselor who wants you to benefit from treatment. And I will reserve the rest of my time. Okay, you can take the rest of your time. Thank you. That's fine. Ms. Varner? Good morning. May it please the court. Sarah Varner for petitioners. I think that the court is framing the question correctly. The issue that's before the court today is does Indiana's policy of requiring admissions, sweeping admissions during their sex offender treatment program, combined with the penalties associated for failing or refusing to do so, combine together to create compelled speech. So can I ask you, based on our conversation just now with Ms. Barrow, is there anything that prevents the counselors from passing along troubling information that they hear, information that might point to a crime? I understand that they're mandatory reporters if they find out something about a juvenile or an elderly person, but putting to one side the mandatory reporting context, are the counselors free to say, gee, you know, inmate so-and-so has just revealed a pattern of behavior that I think will solve a lot of cases in such-and-such county, and they just passed along? They are not. In fact, in the forms that are required for the sex offenders to sign off on, they are told that there is extremely limited confidentiality in the program. I think it's a mistake to believe that the information that they disclose stays within the group, and I would also argue that the information does come out in the group, because that's how the polygraphs happen for the particular counselor's assessment that they're not disclosing enough. But they're warned that that information can be shared within the institution. It can be shared with law enforcement. It can be shared with, and inside the institution, it's very broad as well. It just says other personnel, treatment providers, law enforcement, family members, all the way down to employers or landlords. One of the points your adversary makes is that the program has been in place since 1999, and there's not one example of a referral. Is that history relevant or irrelevant as a legal matter, in your view? It is irrelevant, and, in fact, the Indiana Supreme Court stated that as well. Why is it legally irrelevant? It's legally irrelevant because the standard that we're looking at is whether speaking creates a risk of incrimination, not whether or not anyone's ever been charged or convicted on that information. It's completely irrelevant. So your opponent emphasizes that these people who are hearing, I don't want to talk about the group sessions right now. I want to talk about the initial disclosure to the individuals. I'm trying not to call them something. But does it matter if we call them prison personnel or counselors or whatever if there's no confidentiality guarantee? She's saying that there's a therapeutic purpose in some, is trying to get people ready to succeed when they're released into the community and so forth. And so even though these counselors might spill the beans to somebody, it's still somehow a benign event. No, I don't think it matters at all because for the reasons exactly that you're saying, they can share this information widely. And there's a real crossover between, this isn't argued in my brief, or maybe not very clear from the record, but there's a real crossover between the therapeutic providers and the people who sign off on the disciplinary actions. It's kind of unclear. Your disclosures within the treatment setting are providing the basis for this disciplinary action and for this credit time to be removed from you every 60 days. So is it the counselor who refers somebody to a polygraph? And is there only one polygraph dealing with previous sexual encounters that are not part of the offensive conviction? I'm not sure I understand that question. Well, maybe I was confused. But if I understood Ms. Barrow correctly, there's only been one time in the history of this Indiana program that somebody's been asked to take a polygraph for failing to be fully forthcoming about other activity. Absolutely not. It was an extensive period of discovery in this case. And I received information from a very large number of prisoners who had been subject to this policy. I didn't include the number of polygraphs that had been requested. I just tried to limit myself to examples and briefs. But I could submit something after argument if the court would like to see more examples of polygraphs for that reason. Okay. I think that's enough. If the court has no further questions, I will waive the rest of my time, and I will ask the court to affirm the district court. Okay. That's fine. So I think you have a minute and a half, Ms. Barrow. Well, the court asked counsel the question, does anything prevent counselors from passing on any information apart from the statutory duty to report? And the answer is yes, because these are mental health professionals who operate under standards created by statute of confidentiality. The confidentiality doesn't cover incriminating information, but the counselors can't go to their friends and say, so-and-so. What's incriminating information, in your view, as you just used that term? Well, incriminating information would be, you know, I molested my niece, Heather, four years ago. You know, a specific person, so that they can say, okay, we need to interview Heather's family. Something that's not incriminating is saying, generally, I used to molest prepubescent girls. Or the number of, you know, it's something, they're looking for therapeutic reasons at these patterns of behavior. But the terms of the program require far more specific information than that. Well, and I intended to address the question about non-incriminating information. And I thought that was the question to counsel, is does anything prevent those disclosures? And the answer is yes, that these are still mental health professionals who have general requirements of confidentiality. But exempt from those general requirements is incriminating information. I beg your pardon? Well, there's a separate statutory duty to report, if they hear information that's sufficiently incriminating. These are two different types of information. And so, just to close, I would say we would ask this court to reverse and remain with instructions to enter judgment in favor of the respondent. All right, thank you very much. Thanks to both counsel. We will take the case under advisement.